# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARIA GUERRERO and ) <br> RAUL MARTINEZ, as Co-Special ) <br> Administrators of the Estate of ) <br> DIANA PAZ, deceased, ) <br> ) <br>       Plaintiffs, ) <br> ) <br>       v. ) <br> ) <br> KRZYSZTOF PIOTROWSKI, ) <br> in his individual capacity, ) <br> ) <br>       Defendant. ) | 13 C 6119 <br><br> Judge John Z. Lee |

## MEMORANDUM OPINION AND ORDER

Early in the morning on September 2011, Defendant State Trooper Krzysztof Piotrowski arrested Diana Paz for driving under the influence of alcohol after observing Paz driving her car headlong into oncoming traffic on the wrong side of the expressway. After Paz was processed, Piotrowski dropped her off at a local gas station, although Paz did not have her cell phone or money. Thinking that her car was on the expressway, Paz ventured onto the expressway, where she was struck by a car and killed. Plaintiffs Maria Guerrero and Raul Martinez, as administrators of Paz's estate, have sued Piotrowski, in his individual capacity, under 42 U.S.C. § 1983 for violating Paz's right to due process (Count I) and under Illinois common law for negligence/wrongful death (Count II). Piotrowski has moved to dismiss Counts I and II pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6).[1] For the reasons provided herein, the Court grants the motion and dismisses the complaint without prejudice.

---

[1] In response to the motion to dismiss, Plaintiffs now disavow that they intended to bring a negligence claim in Count II of the instant complaint. *See* Compl., Count II (entitled "NEGLIGENCE (Wrongful Death).") Plaintiffs assert that Count II merely alleges the measure of the damages

# Facts[2]

**I.     The Events of September 2, 2011**

On September 2, 2011, at 3:43 a.m., State Trooper Krzysztof Piotrowski observed Diana Paz driving headlong into traffic on the wrong side of the Eisenhower Expressway and stopped her because he suspected that she was driving under the influence of alcohol.  Compl. ¶¶ 1-12.  Piotrowski noticed that Paz's eyes were bloodshot and glossy and that she demonstrated slurred and confused speech.  *Id.* ¶¶ 9-10.  When Piotrowski removed Paz from her vehicle and placed her in the back of his squad car, he knew that she had left her personal belongings, including her money, purse, cell phone, keys, and driver's license, in her vehicle and that the vehicle was towed from the scene.  *Id.* ¶¶ 13, 15.

Piotrowski drove Paz to a nearby location and administered sobriety tests.  *Id.* ¶¶ 16-17.  Paz failed the sobriety tests, and Piotrowski arrested her for driving under the influence of alcohol and transported her to the Westchester Police Department.  *Id.* ¶ 19.  While Piotrowski was at the Westchester Police Department, he received Paz's vehicle log sheet, which listed her personal belongings that remained in the towed vehicle.  *Id.* ¶ 20.

At 4:56 a.m., the Westchester Police Department finished processing Paz's arrest.  *Id.* ¶ 24.  Piotrowski knew that Paz was still under the influence of alcohol upon her release.  *Id.* ¶ 23.  At 5:40 a.m., roughly two hours after Piotrowski stopped Paz, he placed her back into his vehicle and transported her to the parking lot of a gas station at 825 Mannheim Road in Westchester, and left her there, even though he knew that Paz had no money, purse, or cell phone.  *Id.* ¶¶ 25-26.

---

requested with regard to the section 1983 claim in Count I.  Based on this concession, only Count I remains for adjudication.

[2] For purposes of this motion to dismiss, the Court assumes that the facts alleged in the complaint are true.  *See Catalano, Inc. v. Target Sales, Inc.*, 446 U.S. 643, 644 (1980).

Because Paz believed her vehicle was still located on the highway, she walked onto the Eisenhower Expressway and was struck and killed by a motor vehicle. *Id.* ¶¶ 33-34.

## II. The State Court Proceeding

On March 15, 2012, Plaintiffs sued Piotrowski and the Village of Westchester for negligence in the Circuit Court of Cook County, Law Division. *See* Def.'s Mem. Supp. Mot. Dismiss, Ex. A, Compl. After the Village was dismissed as a defendant, Plaintiffs amended the complaint to allege negligence (Count I) and willful and wanton conduct (Count II) against Piotrowski. *See id.*, Ex. B, 2d Am. Compl.

According to Plaintiffs, in the state court proceeding, Piotrowski moved to dismiss the negligence claim (Count I) and the willful and wanton allegations (Count II) pursuant to 735 Illinois Compiled Statute 5/2-615 ("2-615 Motion"), arguing that Piotrowski did not owe a duty to Paz. *See* Pls.' Resp. Mot. Dismiss 2. Piotrowski also moved to dismiss Counts I and II pursuant to 735 Illinois Compiled Statute 5/2-619 ("2-619 Motion") and argued that the state court lacked jurisdiction because sovereign immunity barred his claim. *See id.*

Cook County Circuit Court Judge Moira Johnson agreed with Piotrowski and held that sovereign immunity applied and Plaintiffs were required to bring all claims against the employee in the Illinois Court of Claims. *See* Pl.'s Mem. Opp'n Def.'s Mot. Dismiss, Ex. B, 7/18/13 Hr'g Tr. at 49; *see also* 705 Ill. Comp. Stat. 505/8 (establishing that the Illinois Court of Claims has exclusive jurisdiction over "[a]ll claims against the State for damages in cases sounding in tort").

On August 27, 2013, Plaintiffs filed the instant case, and Defendant has moved to dismiss the complaint as barred by the *Rooker-Feldman* doctrine and the doctrine of res judicata. Of course, if Defendant is correct regarding the former, the Court lacks jurisdiction to consider the latter. *See GASH Assocs. v. Vill. of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993). If, however,

3

Defendant is incorrect about the application of the *Rooker-Feldman* doctrine, then the Court has jurisdiction to address Defendant's motion to dismiss for failure to state a claim. *See id.*

## Analysis

I.  **Motion to Dismiss for Lack of Jurisdiction**

When moving to dismiss a complaint pursuant to Rule 12(b)(1), a defendant may launch either a facial or factual attack on jurisdiction. *Stroman Realty, Inc. v. Grillo*, 438 F. Supp. 2d 929, 932 (N.D. Ill. 2006). When making a facial attack, as Piotrowski does here, a defendant contends that the allegations in the pleadings are insufficient on their face to support federal jurisdiction. *See Freiburger v. Emery Air Charter*, 795 F. Supp. 253, 256 (N.D. Ill. 1992). In such circumstances, the "allegations [in the complaint] are taken as true and construed in a light most favorable to the complainant." *See Cedars–Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993). The party seeking to invoke subject matter jurisdiction bears the burden of establishing it. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006).

Defendant first argues that Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine bars federal district courts from engaging in appellate review of state court judgments. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). "The *Rooker-Feldman* principle prevents a state-court loser from bringing suit in federal court in order effectively to set aside the state-court judgment." *Gilbert v. Ill. State Bd. of Educ.*, 591 F.3d 896, 900 (7th Cir. 2010). The crucial inquiry is "whether the federal plaintiff seeks to set aside a state court judgment or whether he is, in fact, presenting an independent claim." *Kamilewicz v. Bank of Boston Corp.*, 92 F.3d 506, 510 (7th Cir. 1996). In other words, "if the injury which the federal plaintiff alleges resulted from the state court judgment itself, then *Rooker-Feldman* controls, and the lower federal courts

4

lack jurisdiction over the claim." *Id.* If, however, "a federal claim alleg[es] a prior injury that a state court failed to remedy," then *Rooker-Feldman* is no bar. *See Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 555 (7th Cir. 1999) (quotation omitted).

Here, Plaintiffs do not seek to set aside the state court judgment, but are pressing an independent claim not raised in the state court proceeding. Plaintiffs' federal due process claim alleges that Piotrowski caused a constitutional injury to Paz that occurred *prior to* the state court ruling, not *because of* the state court ruling. Because the federal claim alleges a prior injury that the state court failed to remedy, *Rooker-Feldman* does not bar Plaintiffs' claim. Accordingly, the Court addresses the motion to dismiss for failure to state a claim.

## II. Motion to Dismiss for Failure to State a Claim

Next, Defendant moves to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6). For the purposes of a Rule 12(b)(6) motion to dismiss, "a court must accept as true all of the allegations contained in a complaint." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'" *Id.* at 663 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Despite the express language of Fed. R. Civ. P. 12(b), . . . [t]he district court may also take judicial notice of matters of public record without converting a 12(b)(6) motion into a motion for summary judgment." *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (quotations omitted); *see Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080-82 (7th Cir. 1997) (holding that another court's decision is a proper subject of judicial notice); 5A Wright & Miller § 1357, at 299 (noting the exemption applies to "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint").

A.      Res Judicata

As an initial matter, Defendant argues that because the state court previously dismissed Plaintiffs' negligence claim, Plaintiffs' section 1983 claim is barred by the doctrine of res judicata. "[F]ederal courts must give a state court judgment the same preclusive effect that it would receive under state law." *Wilhelm v. Cnty. of Milwaukee*, 325 F.3d 843, 846 (7th Cir. 2003). "Under Illinois law, an action is barred by res judicata when there exists: '(1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of cause of action; and (3) an identity of parties or their privies.'" *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 591 (7th Cir. 1993) (quoting *People ex rel. Burris v. Progressive Land Developers, Inc.*, 602 N.E.2d 820, 825 (Ill. 1992)). Defendant bears the burden of establishing the three necessary elements of a res judicata defense. *Harrison v. Sheriff of Cook Cnty.*, No. 11 C 5583, 2012 WL 1578421, at *3 (N.D. Ill. May 4, 2012).

Addressing the first element, Defendant argues that there has been a final judgment on the merits, because the state court judge granted his 2-615 motion to dismiss the negligence (Count I), holding that Defendant did not owe a special duty to Paz. *See* Def.'s Mem. Supp. Mot. Dismiss, Ex. C, 7/18/13 Order; *see also See* Pl.'s Mem. Opp'n Def.'s Mot. Dismiss, Ex. B, 7/18/13 Hr'g Tr. at 32. In response, Plaintiffs argue that there has not been a final judgment on the merits, because the state court judge also dismissed the case for lack of jurisdiction when it granted Defendant's 2-619 motion to dismiss the willful and wanton conduct claim (Count II) based on sovereign immunity. *See* Def.'s Mem. Supp. Mot. Dismiss, Ex. C, 7/18/13 Order; *see also* Pl.'s Mem. Opp'n Def.'s Mot. Dismiss, Ex. B, 7/18/13 Hr'g Tr. at 49. Plaintiffs' argument is sound.

Illinois Supreme Court Rule 273 provides: "Unless the order of dismissal or a statute of this State otherwise specifies, an involuntary dismissal of an action, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join an indispensable party, operates as an adjudication upon the merits." Ill. Sup. Ct. R. 273. A dismissal for lack of jurisdiction is not an adjudication on the merits. As such, where a prior action is dismissed for lack of jurisdiction, res judicata does not preclude the second action. *Denault v. Cote*, 746 N.E.2d 765, 767 (Ill. App. Ct. 2001); *see People v. Boclair*, 789 N.E.2d 734, 762-63 (Ill. 2002) ("[A] dismissal for lack of jurisdiction does not constitute an adjudication on the merits." (quotation omitted)).

For present purposes, we must remember that, under Illinois law, "[t]here is no separate and independent tort of willful and wanton conduct," but rather, "[i]t is regarded as an aggravated form of negligence." *Krywin v. Chi. Transit Auth.*, 938 N.E.2d 440, 452 (Ill. 2010). Although Plaintiffs' state court complaint sets forth two counts, one for "negligence" (Count I) and another for "willful and wanton conduct" (Count II), they both constitute one single claim for negligence as a matter of law. Thus, the state court's holding that it lacked jurisdiction as to Count II necessarily applies with equal force to Count I. And Defendant has failed to provide any authority that would support a different conclusion.

Additionally, in dismissing the state court complaint, the state court judge clearly contemplated that Plaintiffs could bring their negligence claim (of either variety) in the Illinois Court of Claims. *See* Pl.'s Mem. Opp'n Def.'s Mot. Dismiss, Ex. B, 7/18/13 Hr'g Tr. at 48-49 ("I am going to grant this motion based upon sovereign immunity and the requirement for all claims against the State employee to be brought with the Court of Claims . . . . So I will dismiss this case pursuant to 619."). Because the state court dismissed Plaintiffs' claim for lack of

jurisdiction, the doctrine of res judicata does not apply to Plaintiffs' section 1983 substantive due process claim.

B. **Section 1983 Substantive Due Process Claim**

Defendant also argues that Plaintiffs have failed to state a claim under section 1983 for a violation of Paz's substantive due process rights. "Section 1983 imposes liability when a defendant acts under color of state law and violates a plaintiff's rights under the Constitution or laws of the United States." *Pittman ex rel. Hamilton v. Cnty. of Madison*, 746 F.3d 766, 775 (7th Cir. 2014).

In *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 197 (1989), the Supreme Court concluded that "a state's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney* makes "clear that the Due Process Clause is a limitation on the state's power to act, not a guarantee of certain minimal levels of safety and security." *Monfils v. Taylor*, 165 F.3d 511, 516 (7th Cir. 1998).

"Two 'exceptions' have grown out of *DeShaney*." *Id*. The first exception is "if the state has a 'special relationship' with a person, that is, if the state has custody of a person, thus cutting off alternate avenues of aid." *Id.* The second exception is the "state-created danger exception," *id.*, where the state "affirmatively places a particular individual in a position of danger the individual would not otherwise have faced." *Reed v. Gardner*, 986 F.2d 1122, 1125 (7th Cir. 1993).

Only the latter arguably applies here because the tragedy that befell Paz occurred after she was released from custody. To state a substantive due process claim under a state-created danger theory, a plaintiff must demonstrate that: (1) the defendant, "by its affirmative acts,

8

created or increased a danger" that the plaintiff faced; (2) the defendant's "failure to protect her from danger was the proximate cause of her injuries; and (3) the defendant's failure to protect her must "shock the conscience." *Jackson v. Indian Prairie Sch. Dist. 204*, 653 F.3d 647, 654 (7th Cir. 2011) (quotation omitted). Failure to allege facts to establish any one of these elements dooms a substantive due process claim. *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 828 (7th Cir. 2009) (affirming the district court's grant of a motion to dismiss and solely addressing one of the three prongs). What is more, the circumstances where the Seventh Circuit has applied the "state-created danger" exception "are rare and often egregious." *Estate of Allen v. City of Rockford*, 349 F.3d 1015, 1022 (7th Cir. 2003).

The facts of this case are similar to those in *Lizak v. Village of Campton Hills*, No. 009 C 4283, 2010 WL 432308, at *4 (N.D. Ill. Feb. 2, 2010). In *Lizak*, police officers saw Lizak drive his truck in reverse into a post and arrested him for driving under the influence. *Id.* at *1. The officer observed that the Lizak smelled of alcohol, was unable to hand the officer his driver's license, stumbled out of his truck, and failed three field sobriety tests. *Id.* Two hours later, Lizak posted bond, and the police officers released him without a cell phone even though they knew that he was still drunk. Ninety minutes later, Lizak stumbled into an intersection and was struck by a car and killed. *Id.*

The *Lizak* court granted the defendants' motion to dismiss on the grounds that the plaintiffs had failed to state a substantive due process claim because the officers had not increase or create the danger that caused Lizak's death. *Id.* at *4. As the *Lizak* court explained:

> The officers did not create Lizak's intoxication, and they did not make his intoxication worse; they made him better off by removing him from his truck. It is not as though the officers created additional danger by, say, driving Lizak into the wilderness and leaving him there or by, say, sending home a sober companion (Lizak was alone when Johnson found him) who might otherwise

9

> have seen him home safely. As plaintiffs would have it, the defendants' only option was to keep Lizak in jail overnight. There is no constitutional right to be imprisoned. *Wilson v. Formigoni*, 42 F.3d 1060, 1066 (7th Cir. 1994) ("But there is no constitutional right to be deprived of liberty-there is no right to be imprisoned.").

*Id.*

*Doe v. Village of Arlington Heights*, No. 11 C 2764, 2012 WL 1068787, at **5-8 (N.D. Ill. Mar. 29, 2012), also is instructional. In that case, a site manager reported to the police that a teenage girl and three teenage boys were drinking alcohol behind a dumpster at an apartment complex. *Id.* at *1. The officer observed that the girl was so drunk that she could not stand up by herself and that her head was down and that her eyes were closed. *Id.* After the officer spoke briefly to the teens, he allowed the three males to take the plaintiff home and called off another police officer who had been dispatched to the scene. *Id.* Instead of taking her home, however, the three boys carried the plaintiff to the laundry room at the apartment complex, where she was sexually assaulted. *Id.*

The *Doe* court dismissed the complaint. Because the plaintiff was extremely intoxicated and in a secluded area with three males when the police officer arrived on the scene, the court held that plaintiff was already in a dangerous situation, and thus the police officer neither had created or increased the danger that she faced. *Id.* at *5. The *Doe* court stated that "if the police had never been involved, the danger to the plaintiff would have been the same or worse." *Id.* at *6 (quotations omitted).

Similarly here, when Piotrowski first encountered Paz, she was extremely intoxicated and driving headlong into oncoming traffic on the wrong side of the expressway. Piotrowski did not create Paz's intoxicated state, and he rescued her from an extremely dangerous situation. Furthermore, when Piotrowski dropped Paz off in the parking lot of a local gas station, he did not

10

create the danger that, in her intoxicated state, Paz might wander onto the expressway looking for her car. Nor is there any indication that the gas station itself was an unsafe or dangerous place. Rather than creating or increasing risk to Paz's safety, the facts indicate that Piotrowski rescued Paz from a very dangerous situation and left her in a reasonable location. Perhaps, the Winchester Police Department could have (perhaps even should have) taken some additional steps to assist Paz, such as returning her cell phone, offering to place a call for her upon her release, offering her a ride home, or waiting until the gas station opened before dropping her off there. But, the Due Process Clause does not obligate it to do so. *See Delaney*, 489 U.S. at 195 ("The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security."). In short, viewing all of the alleged facts as true and construing all reasonable inferences in Plaintiffs' favor, Paz was in no worse of a position than she would have been had the Winchester Police Department had not acted at all.

The cases upon which Plaintiffs rely are distinguishable. In *White v. Rochford*, 592 F.2d 381, 385 (7th Cir. 1979), the defendant police officer arrested a driver for drag racing and then left his child passengers stranded in the car on the shoulder of the busy, eight-lane Chicago Skyway on a cold night. In so doing, the police created a danger to the children that otherwise would not have existed. *Id.* at 385 n.6. In *Reed*, 986 F.2d 1122, the police officers arrested the driver of a car for drunk driving, only to induce a passenger, who also was drunk, to take the wheel, thereby creating a new danger for other motorists. *Reed*, 986 F.2d at 1125. In *Monfils*, 165 F.3d 511, the Seventh Circuit surmised that, where the police promised that a recording of a tip about a suspect would remain anonymous but then gave the tape recording to the suspect, who then murdered the tipster, the police created the danger to the tipster by making him a target of violence. *Monfils*, 165 F.3d at 518. More recently, in *Paine v. Cason*, 678 F.3d 500 (7th Cir.

2012), the police arrested a mentally unstable person in the safety of an airport, only to release her in a dangerous neighborhood seven miles away just before nightfall, "releas[ing] her into the lions' den at the Brookfield Zoo." *Id*. at 510.

In contrast, as currently pleaded, Piotrowski's conduct did not create or increase the danger of private violence. "When courts speak of the state's increasing the danger of private violence, they mean the state did something that turned a potential danger into an actual one, rather than that it just stood by and did nothing to prevent private violence." *Sandage v. Bd. of Comm'rs of Vanderburgh Cnty.*, 548 F.3d 595, 599-600 (7th Cir. 2008). The phrase "'create or increase' must not be interpreted so broadly as to erase the essential distinction between endangering and failing to protect . . . ." *Id.* (citation omitted). *See also Windle v. City of Marion*, 321 F.3d 658, 661 (7th Cir. 2003) ("[T]he key question . . . is: What actions did the state actor affirmatively take, and what dangers would the victim otherwise have faced?") (quotations and citations omitted). Here, Paz was in "no worse of a position that if [Piotrowski] had not acted." *Doe*, 2012 WL 1068787, at *6.

There is no doubt that the circumstances of this case are tragic. The law of the Seventh Circuit as outlined above, however, demands more of Plaintiffs in order to state a substantive due process claim. Viewing the facts as currently pleaded and drawing all reasonable inferences from those facts in Plaintiffs' favor, Plaintiffs have failed to state a substantive due process claim.[3] Therefore, the Court grants Defendant's motion to dismiss the complaint.

---

[3] Because Plaintiffs have failed to allege facts to establish one of the prongs of the "state-created danger" exception, the Court need not resolve whether the other prongs have been satisfied, *see, e.g., Buchanan-Moore*, 570 F.3d at 828, nor need the Court address whether Defendant is entitled to qualified immunity. *See Martin v. Shawano–Gresham Sch. Dist.,* 295 F.3d 701, 714 n.14 (7th Cir. 2002) (not addressing qualified immunity because complaint did not state a constitutional violation).

## Conclusion

For the reasons provided herein, the Court grants Defendant's motion to dismiss [9]. The Court also grants Plaintiffs leave to file a First Amended Complaint that comports with the requirements of Federal Rule of Civil Procedure 11 within twenty-one days. If Plaintiffs fail to amend the complaint in a timely manner, the Court will presume that they no longer wish to litigate the substantive due process claim and will dismiss this case with prejudice.

**SO ORDERED**  ENTER: 9/16/14

**United States District Judge**